Good morning. Illinois Appellate Court, First District Court is now in session. The Fourth Division, the Honorable Justice Bertina Lampkin presiding, case number 19-0572, consolidated with 19-0783, 21-0017, and 21-0185, NRA parents of AA, AA, and AA minors. Thank you. Thank you. Good morning, everyone. I know the case has a lot of issues, so let me just start by saying I'm going to give you a little more time. Normally, we give 15 minutes per side. We'll give each side 20 minutes. If our questions, of course, take you longer than that, we will adjust the time accordingly. I'd like the parties to identify themselves for the record, please. Good morning, Your Honor. Michael DiDomenico for the Appellant. And, counsel, do you want to reserve any of your time for rebuttal? Yes, ma'am. I'll reserve five minutes for rebuttal. Okay. Thank you. And, counsel? Good morning, Your Honor. My name is Paul Bargill, and I represent the Appellee Whippleporn, who is the mother of the three children. Oh, all right. All right, counsel, you can begin. Justice Lampkin, and may it please the Court again, Michael DiDomenico for Harlow Higginbotham. The four of us might agree on anything today is that this is not the typical child support modification case that this Court sees. As Justice Lampkin, Your Honor, acknowledged, there's potentially a lot to talk about depending upon how the Court is looking at the issues presented. In that vein, I'll jump to any topic you wish at any time you wish. But left on my own, I'm going to focus this morning where we contend this case mostly begins and ends. And that's with Section 615 of the Uniform Interstate Family Support Act. That section provides unambiguously that a court of this state may only modify a child support order entered by a foreign country if the moving party, and here that's the Appellee, establishes that that country, and here that's Thailand, lacks jurisdiction to modify its order or refuses to do so. On this record, there is no dispute that neither condition has been satisfied or established. The mother, Whippiporam, testified at the merits trial that she's never asked the Thai courts to modify its order. Therefore, obviously, the courts there couldn't be said to have refused to modify it. Can I ask you a question before we get to 615? Yes, sir. And that is, how is this act even applicable? It's applicable because the residency of the parties is determined, or it's because the mother is currently living in England, or it was at the time of the trial, and Mr. Higginbotham lives here in Illinois. That means that the act applies. And under what section of the act? It's 106, excuse me, 102 of the act. 102? I'm sorry. 102 is the definitions. 105A3, is that what you're basing it on? 105A3, I'm sorry, your honor, yes. The obligee, the obligor, and the poor child residing in a foreign country. Tribunal of this state shall apply the act as applicable to a support proceeding involving a foreign support order, a foreign tribunal, or an obligee, obligor, or child residing in a foreign country. She's with or under the high support order, and she lives in England. She lives with the children in England. What are we supposed to do with 105B, which is the discretionary application of the act? I think that 105B is only talking about comity, right? And it says a tribunal of the state that has requested to recognize and enforce a support order on the basis of comity, which this court already did in Arlo 1, may apply the procedural and substantive provisions of Article 1 through 6. Again, comity is a function of enforcing the order. It is not a function of enforcing the order. It is a function of modifying it, and that's the important distinction. Hold on. Let's get one issue out of the way. You don't dispute the fact that this court had the ability to enforce the tied judgment, do you? No, I do not. So then the arrearage is, if they're mathematically correct, you have no defense to? There is no arrearage. When the case was enrolled and recognized here under the Doctrine of Comity, the amount that was due was fixed and paid, and then the order was complied with throughout the duration of the modification procedure. Okay. All right. Go ahead. So again, 105B is talking about comity, and that's, I think, what the critical distinction here is, and I think where the circuit court and frankly, I think, the blue brief goes off track, is that modification is separate and apart from enforcement under UIFSA. That is not my argument. That is an adjudicated, well-understood proposition of UIFSA law from our Supreme Court going back some 20 years, shortly after UIFSA was enacted and the cases started hitting the Supreme Court. That being said, Section 615 very clearly says that jurisdiction to modify the support order of a foreign country can only be done if that court lacks or refuses to exercise jurisdiction to modify its order under its own laws. Again, she never asked, and the experts, both sides proffered experts, although the mother's expert was her own lawyer in Thailand, but both experts affidavit and the circuit court acknowledged that under Thai law, there is a procedure for the modification of support orders. If I could interrupt, sorry, counsel, but 615 refers to a foreign country, correct? Correct. So even if, what are we to do if the act applies under 105A3? Judge Rashford, you've frozen. Yeah, you're frozen or you're breaking up. I really want to hear your question. Will you put it in the chat while you're trying? It may not be applicable, but please do. I don't think she can hear us, Judge Hoffman. Can you hear us, Mary Kay? All right, she's off. Here we go. She's back. We missed your question completely, Judge Rashford. I'm sorry. I'm sorry. But we want to hear it, so please. So if the act applies through 105A3, but 615 discusses foreign country, how are we to then interpret the act or fill in a gap, if you will? I'm not sure I caught all of the question, but I think the question was, do we read 615 in conjunction with 105? 105 provides the basis for the fact that Articles 1 through 6 apply to this proceeding, right? 615 is effectively a condition precedent for the court here to modify an order from a foreign country here in Thailand. If the conditions are not met, then this court, pursuant to this statute, has no jurisdiction or authority to modify the order. It can only enforce it, pursuant to the doctrine of comity, which this court affirmed in Arlo 1. That's how this statute reads. It's effectively a condition precedent for the court to act and modify an order from a foreign country. And again, there is no dispute that neither one of these conditions were met. In fact, the blue brief concedes the point. In our view, that is the end of this discussion, because there is no other statute that can be, there's no other law in Illinois that can be used to modify the child support order from Thailand. The blue brief intends to argue that comity itself provides the basis for modification. There's no authority for that, there's no case cited for that, and none exists, because that is no different than saying that there is no difference between modification and enforcement. The Supreme Court said there is. The blue brief also says, well, you can just rely on Section 510 of the Illinois Marriage and Dissolution of Marriage Act and the Parentage Act. Just treat this order as if it were just any other child support order entered in this state. There is no case that supports that idea either, nor could there be. As a matter of statutory construction, this court is charged with construing similar statutes together. UIFSA says these orders can only be modified if the certain conditions are met. They're not met. You can't read another part of another act to say, forget about UIFSA, it's basically an idle act of the legislature, because we can modify it under this law here. I would suggest as a matter of statutory construction, that is an impossible conclusion for the three of you to reach, and it is the one effectively urged multiple times in the blue brief. The only other attempt to stay within UIFSA in the blue brief is looking to Section 616. I don't think you have to look any further than the title of that section, which provides for a procedure to register a child support order from a foreign country for purposes of modification. Again, registration, recognition by comedy, all flow to enforcement, and enforcement is different than modification. The conditions are in 615, and there's just no dispute that those conditions were not met, nor do they attempt to suggest otherwise. 615, the title of 615 is jurisdiction to modify child support order of a foreign country. Thailand is not a foreign country within the definition in 102. Why would 615 apply at all? Thailand is a foreign country. I think that the affidavits of the both sides' experts provides that there's a mechanism for the enforcement and modification of their orders. That, therefore, meets the definition of a foreign country. But even if Thailand wasn't a foreign country, the result is the same. It's the fact that you have to be talking about a foreign country, you also have to be talking about a foreign country that lacks or refuses to exercise its jurisdiction to modify its order. It gets to the same place. UIFSA applies. Whether the conditions are met which afford the court the ability to award the modification relief is a different question. And if those conditions aren't met, there is no jurisdiction to modify those support and you have to go back to the issuing tribunal. And I might point out something about section 615. When I read it, it makes me think a lot about what this court did in Harlow 1, which was extend comedy to the Thai order for purposes of enforcement. Comedy itself is based upon a certain respect for the other country and the other country's laws and the other country's order. When I read 615, I sort of see the same thing. We're going to respect your order under comedy to enforce it. We're going to use the local courts and the local enforcement mechanisms against the local resident to make sure the order is enforced. But we're not going to disturb your procedure and the time that you put into adjudicating all of this until you tell us you're not going to enforce this order or it is otherwise demonstrated that the court there lacks jurisdiction. I would suggest to you there's the same type of respect for foreign tribunals in 615 as there is in the doctrine of comedy. How would the Thai court obtain jurisdiction to modify its order? The mother could file a petition and that's in the affidavit of our expert. There's no question mother can file the petition. How would she ever get jurisdiction over the father who's a resident of the state of Illinois, unless he sets foot in Thailand, of course. Well, the case has already been adjudicated to a conclusion. The initial order has already been adjudicated to a conclusion. And if she files an action there, the affidavit is made clear, it'll be heard there irrespective. It isn't the question of obtaining jurisdiction over him in the first instance. The court already had it. No, no, there's no question. The Thai courts had jurisdiction over him at the trial level, the appellate level, and their Supreme Court level. I want to know how they get jurisdiction over him to modify. And I'm not talking about subject matter jurisdiction. I'm talking about personal jurisdiction. I think it continues forever. Honestly, your honor, I'm not familiar enough with Thai law to know if they think about personal jurisdiction in the same way that you and I talk about it. Well, if you can't establish that they're able to get personal jurisdiction over him, then how do you rely on 615? Our expert affidavit states that the modification of a court order or any motion to be filed in that court, and there is any request for the modification of the judgment submitted to the court which gave the judgment in the first instance. That's what our expert's affidavit says. There's no dispute about what that says. Again, I think that subject matter jurisdiction that Justice Huffman was referring to, there's nothing in the affidavit, and it talks that she would be able to bring it because of some, you know, that she's still domicile or she brought it in the first place, but there's nothing in the affidavit that talks about how there would be personal jurisdiction over the father. Again, I'm not aware if Thailand has the same concept of personal jurisdiction that we do. I know that both experts agree that the modification petition could be brought and adjudicated to a conclusion in Thailand under Thai law. I don't know the intricacies of how they I also know that all of this was the burden of the other side. It was not on my side to demonstrate any of this. They're the moving party under the case law, the various cases that we cited in our brief. It was on them to establish that the Thai courts couldn't exercise jurisdiction or there might be some issue about modification personal jurisdiction that exists in Thailand to catch Mr. Higginbotham on the modification. They didn't do any of that, nothing, and it's their burden. It's not my side's burden, their burden. But notwithstanding, our side's expert, you know, gave the most thorough review and explanation of Thai law, which effectively concurred with the foreign's attorney that this action could be brought in Thailand. And as far we're concerned under 615, that's all that's all I think. There's no showing that they lack the authority or the jurisdiction to modify the order. And that's really the beginning and the end of it under section 615. I want to talk, again, we see this threshold issue as effectively being dispositive of this case. I want to just talk briefly about what that necessarily means in our view and what relief we would be entitled to if the court agrees with our position. Not only must the child support modification judgment and the related orders that ordered over $7 million in child support be vacated or reversed, but this court would need to judicially dissolve the child, the judicially created child support trust ancillary to the judgment. And in our view, revisit the issue of the attorney's fees that were awarded in conjunction with this petition that never should have been adjudicated in the first place, as well as vacate the $50,000 rule 137 sanction. Can I ask a question, if you know, how was the $50,000 arrived at? I would have no idea. It was effectively was as far as I can tell from the record, I was involved in the circuit court, but not at that particular time. It was effectively an arbitrary number that this judge just picked. It didn't seem to have any rhyme or reason. It wasn't necessarily tied to anybody's billing records or amounts. It couldn't be tied to attorney's fees because she awarded 100% to the wife's attorney's fees. Right. It was over and above and it was penal, which was part of our argument about why it's that it needs to be construed strictly. And we certainly advanced good faith arguments, if not meritorious arguments. This judge just felt that everything that my side of the case said was legally offensive in every single way, because frankly, she was dead set at doing what she was going to do. The statutes be damned. I don't have anything else at this point. Again, there's a lot of issues in the alternative. If the court is going to get past the UIFCT issue and rule that the court had authority with several arguments in the alternative, I'm happy to answer any questions about those, but otherwise I would stand on the briefs and reserve the rest of my time for rebuttal. Judge Hoffman, do you have any additional questions? No, I don't. Judge Rashford? I may just have a couple of kind of technical things. The 80,000 pounds that were... You're frozen again, Mary Jane. I'm very sorry. The 80,000 pounds that Harlow was paid or directed to pay, what happened to that? I think that went into the interim fee trust that was initially affirmed or went separately. If you give me a minute on rebuttal when Mr. Bargall is addressing the court, I can get you the definite answer to that. Then can you tell me why was it retroactive to April 1st, 2013? Why was that date chosen? I have no idea. Completely arbitrary. Then just lastly, the request for the injunction regarding the children's citizenship was that ever addressed and was a final order entered in that request? It was done. Yeah, it was done. That's correct. As far as delivering the documents, that was accomplished. Okay, thank you. I'll get you the answer on the 80,000 pounds location. I apologize not knowing that off the top of my head. Thank you, counsel. Mr. Bargall? Thank you, your honor. May it please the court, distinguished counsel. Again, I represent Whippleporn, the mother of the Cripps, the children. In our view, there are two basic issues which impact most, if not all, of the issues involved in this case. The first is, did the trial court have statutory authority under Illinois law to modify the tied judgment concerning support? We contend that it did. If that's true, the second issue is, is the trial court's modification of the tied judgment concerning child support a reasonable exercise of discretion? With regard to the first issue, the circuit court enrolled the tied judgment as an Illinois judgment based on comedy and entered a Supreme Court Rule 304E finding that its order was a final judgment subject to enforcement of appeal. I will appeal that order. This court affirmed, saying, and I quote, we conclude that the circuit court properly extended comedy to the foreign judgment because it was not contrary to Illinois public policy and the father failed to establish that the judgment was obtained by fraud or that he was denied a full and fair opportunity to present a defense in the foreign proceeding. Counsel, I don't think your opponent questions the ability of the court to recognize or register the tied judgment under the doctrine of comedy. The argument is whether the court had jurisdiction to modify that judgment, even if it was entered. Well, with due respect, the case was remanded and the circuit court entered an order which required Harlow to fund a trust for the benefit of the children, which included $1.7 million in interim attorney's fees. Yeah, but could you get to my question? What was the jurisdiction to modify? Well, if your honor is going back to ellipsis, that's what you're talking about, section 615. It seems to me that there are two things that I would say about that. Harlow has consistently argued in the trial court that section 615 of U.S.A. does not apply. On April 4th, 2013, he said, quote, Thailand is not a member of the hate conference on private international law and has not ratified a number of hate conventions, including those related to service abroad. And most importantly, the taking of evidence to protection of children, the hate convention on international recovery of child support and other forms of family maintenance, to which the United States is a After that, on August 17th, 2017, in a reply in support of this motion to dismiss Whippoorn's amended motion to modify the child support, Harlow argued, and I quote, Thailand does not and cannot qualify as a foreign country for purposes of U.S.A. Then again, on August 28, 2017, Harlow argued that Thailand has never been proven to meet the definition of a foreign country. So section 615 does not apply as well. On May 31st, 2018, Harlow argued Your point is that I believe you're trying to say he waived the issue. Yeah, I think I think I don't think he's entitled to argue. Not an appeal when it's different than the argument. I think there are case law to that effect. Is subject matter jurisdiction a waivable issue? No, but I don't think that that's subject matter jurisdiction. Well, then, let me get back to the question I asked you. What is the basis of the trial court's jurisdiction to modify the judgment, not enforce it? Because clearly under comedy, they couldn't afford court enforcement. My child, the child court's authority, if you will, it's I in a. My opponent pointed out in his brief, although the subject has been discussed as jurisdiction at different times between different people, the question is really one of statutory authority. And I contend that the statutory authority that the that the trial court had to amend the judgment was contained in the Parentage Act and the Marriage and Dissolution of Marriage Act. And this court already found in its second Harlow appeal where Harlow appealed the the order requiring him to set up a trust fund with $1.7 million for attorney's fees. He appealed in that saying the court didn't have authority to do that. This court, this court, if you will, indulge me for just a minute. Just real simple, real simple. Is your argument that this court that the trial court had jurisdiction to modify a tied judgment of the Marriage Act of the state of Illinois? Is that your argument? Yeah, my argument is that they had statutory authority under those acts and and and that this court's ruling affirming the determination that to enroll the tied judgment as an Illinois judgment under comedy means that Illinois circumstances presented here. That's that's that's that's the nuts of my argument. Now, I would say I would say another thing with regard to your honor's US argument. I think someone pointed that out, although I don't recall who it was, that Section 616 of UFSA says a party or support enforcement agency seeking to modify or to modify and enforce a foreign child support order not under the convention may register and so on and so forth. And then it says a petition for modification may be filed at the same time as a request for registration or at another time, and the petition must specify the grounds for modification. So this I would contend. Doesn't 615 relate to the registration of child support orders of foreign countries for modification? I agree that Thailand's not a foreign country. 16 doesn't apply. Well, that's fine. 16. I'm not I'm saying if there was a US provision that did apply, it would be 616, not 615. But my point is, but my point is, not not so much. I'm saying they're quoted the wrong section, they said, over and over again, it applies, it doesn't apply, because it doesn't qualify as a foreign country. But my argument is my argument is that once the circuit court enrolled, the judgment is an Illinois judgment under comedy, and this court, this court affirmed that judgment on appeal, then Illinois law, Illinois statutes, the Parentage Act, the Marriage Act, all all apply to the court's modification of the Thai support order that that is, that is, that that is the nuts of my position. Not only that, in the second appeal, in the second appeal, this court did exactly that. The the interim, the interim trust and field award was based on was in in that second opinion, where Carlo challenged that already, this court said, and I already counsel, we know what we said. Let me get back to a question. Do you think that application of the Uniform Act was mandatory in this case, or really discretionary? I don't think I don't think I don't think it was applicable. Well, let me ask a question. Well, five, a says, a tribunal in this state shall apply articles one through six that shall apply, by the way, as applicable article seven, to a support proceedings involving and then there are three examples, all stated in the disjunctive. And the third one under a is an obligee, obligor, or child residing in a foreign country. And there can't be any dispute of the fact that the obligee and the children resided in a foreign country within the definition, because the United Kingdom is a foreign country. And that's where they were residing. So tell me why 105. A three doesn't apply. Well, it doesn't apply. Because you you if itself is not the is not the controlling aspect here. I don't I don't know. I don't think anybody's ever said to I don't know that anybody's ever suggested that that whippoorporn should go to England in and seek modification of the order. No, no, I don't think anyone has ever suggested that. But my question is, my reading of 105. And it's really rather, rather clear, suggests that a tribunal shall apply, shall apply the act, if an obligee or the children reside in a foreign country. Well, I, I go back to section 616, if you want to apply you if so, which says that if a foreign child support order not under the convention, can be registered in under that provision, and that the petition for modification, modification may be filed at the same time as the request for registration, or at another time. So it's clear to me that if if a if a US of provision applies 615, or 616, 616 is the one that covers the circumstances here. Well, I suppose my, my, my question follows the following logic. If under 105. A three, the act shall apply to the circumstance, then in that particular case, it will appear that 603, which is within the statutory provisions covered under 105, says that in B, I believe, or C, except as otherwise provided, a tribunal of the state shall recognize and enforce, but may not modify a registered support order, if the issuing tribunal had jurisdiction. Now the issuing tribunal, you don't dispute that Thailand had jurisdiction to enter the support order in the first instance, right? Obviously. So my question is, why doesn't 603 prohibit modification? Well, it's a, you know, I guess I guess the way the way I would answer the question is perhaps Chris Lampkin. I'm sorry. No, I don't know who broke in there. That was my phone. I'm sorry, I heard someone again. The way, the way I, the way I would answer your question, Your Honor, is there are, there are, there are apparently competing statutory claims for authority here. I would suggest that based on this court's order, not this court, this court's affirmation of the order enrolling the Thai judgment, Illinois judgment based on and this court's, not this court, this court's affirmance of the lower court's order, setting up the trust with the $1.7 million based on Illinois law. Okay. Based on the parentage act, section 808, based on the marriage act, section 508 and 513, I believe is those, those indicate that the court's authority, the court's authority on these circumstances are presented here. This court has already affirmed the court's exercise of statutory authority based on Illinois law. And I would say that determination is, is, is controls the case. Not, not, not some other provision, particularly a provision that in all of its related aspects, which, which Harlow argues throughout the trial court that, that, that it has no application here. So that is, that is my answer to Your Honor's question. I think, I think I'm a little bit, I don't know if I'm out of time now or what. No, you still have three or four minutes, counsel. Okay. I wanted to, I wanted to make a couple of, a couple of quick, quick arguments to the trial court's modification of child support. It constitutes a reasonable exercise of discretion. The law is clear that triplets are not required to live at a minimal level of comfort while Harlow lives a life of luxury. The record demonstrates that he does live a life of luxury. His income, annual income of counsel, counsel, those are, you know, we'll get to those in a minute. All right. Let me ask you two questions. Where did the $50,000 sanction come from? Where did the number come from? You're talking about the number, but not the reason. Yeah, the number. Where did $50,000 come from? I don't, you know, I don't know that there was ever a, and I, and I don't know this record is really long. I don't know that there was ever a calculation of some sort done. I think it was done based on the circuit court's notion that, well here, they said in an order entered June 6, 2014, the circuit court said, it is opinion of this court that Harlow has been responsible for the needless delay in the manner, i.e. in the repeated use of the same arguments in various pleadings after the court has rejected them. And it is clear that Harlow has used his attempt to exhaust what performs legal representation. Now, I think, I think that it was, it was the, it was the trial court's analysis and determination that $50,000 was a reasonable sanction. It was based on her, her, her experience with the case, which went on for, I think over 10 years. And, and, and I, I think it was her analysis that that was a just determination, but I don't know. I don't know that it was ever based on a calculation of, of what was going on. So, so that's that. Can I, can I make two quick points? The sanction motion only asked for attorney's fees. Yeah. And as we talked about earlier, all the attorney's fees were paid. And then this 50,000 was ordered to be put into the trust fund. So it's very hard to know what, what really was the determination here? What was what discrimination, your honor? The determination, you, the, the motion under rule 137 strictly asked for attorney's fees. That's correct. The only request, but all attorney's fees were already ordered to pay or were eventually ordered to pay. And then this 50,000 went into the children's trust fund. Well, I, okay. I mean, I, I don't, I don't, I don't disagree with that. I mean, I don't know. Personally, I don't know from reading the record. I was not there at the trial. I don't know from reading the record where it went, whether it went into the trust fund, whether it went to the lawyer or not. So I can't, I can't answer that question. Honestly, I can only speculate. Okay. Thank you. Council. You know, I wanted to say too, I mean, the, the with regard to the immigration issues that are raised, uh, that, uh, that, uh, uh, that has no bearing on, uh, on this, uh, uh, case at all. The triplets lived in England at the time the modification was entered. They continue to live in England. There is no indication that they were ever deported. And, but, but I think the argument is they're subject to deportation, but the modification and all these millions of dollars seems to be calculated on what the expenses would be if they remained in the United Kingdom. And we, we don't know from this record, whether it was likely they wouldn't remain because the trial judge barred the respondent from introducing evidence relating to their status. But your honor it to, you know, I would, I would, I would submit quite respectfully that, uh, uh, the fact is and was that they weren't deported. So what, what, what impact its whole immigration thing, uh, was, uh, was, uh, well, I mean, if the, if the testimony at the trial level was they can probably avoid deportation for two years, then it would seem to me that the likely course of action would have been to modify the child support with a two-year cap on it to revisit the issue in once it's determined whether they could remain or they wouldn't. Well, well, the question, well, let me respond this way, your honor, the, uh, the, uh, that what you're talking about, uh, it seems to me it's governed by the principle that most of these issues are, which is did the trial court exercise reasonable discretion or that abuses discretion. If you were the trial judge and you made that determination, I don't think anybody could attack it. What about the two-year cap? Because again, it would be an exercise of your who, uh, heard the witnesses testify, knew the facts, determine their credibility and so on. And I think, I think the same thing can be true of, uh, of this judge. Uh, the, the, like I said, the immigration issues, I, I just, I, I just think that's a big non, non-issue and I think it's a red herring. Oh, it was an issue introduced by your client by filing an emergency motion, seeking funds to help stay. Yeah, that's true. That's true. I'm not sure. I'm not sure what's that's an indication of other than that she wanted to stay in England and she didn't want to go back to Thailand. You know, what one could also say too, that if you take a look at, at the record that, uh, Harlow, the father of the triplets and stuff like that looked like, uh, he was, uh, he could maybe behind the scenes to see it was, she was deported back to Thailand. And it was part of, part of a, uh, part of a strategy, uh, on his part to avoid the, uh, to avoid his child support. I mean, if you take a look at all the things that he did in this case to avoid having to pay her, I mean, giving a, uh, giving a $10 million note to his wife, Susan for legal advice, when she's not a lawyer, another $4 million note to her, uh, when he, you know, and it's interesting too, I think when he had, uh, when he, I mean, he had his son Niles after the triplets were born and all this was going on and he changed all his wills and trusts. So only his descendants could inherit from him. And he managed to make sure that none of the triplets were descendants. Only his son Niles was a descendant. Uh, you know, it's just as easy, I think, to look at this case, uh, you know, from that point of view, I'll give you another example. I think it's not going to play down this, the whole idea of, of, of, of the conception and birth of these three children, which is a little bit different, maybe a lot different from a lot of cases is that this didn't happen as a result of an accident. It wasn't something where they had casual sex and guess what? Let me, let me, let me counsel. I mean, we know, we know the, the conception process. Um, I think really both Justice Hoffman and Justice Rochford just wanted you to, um, address basically whether it was an abuse of discretion for the judge, not to allow the, um, the immigration expert to testify. And I think you've, you have addressed it. And so, um, I'm going to stop you because you are beyond your time. Thank you so much, Mr. Domenico, you have five minutes for Roboto. Justice Lampkin, thank you. Um, let me start with something that my good friend on the other side keeps omitting about section 616 of UIFSA. And that's the last sentence that the petition for registration must specify the grounds for modification. Reading that alongside of section 615, that means that the petition had to state under what, on which, that the, that the, that the conditions of section 615 were satisfied or which one of them were, and that was not done. Again, this is a, this is a, this section is only about registration, which only speaks and goes to enforcement, just like comedy. Um, Justice Hoffman, I, uh, agree, uh, with your assessment of section 603C. Well, wait a minute. Don't agree too quickly. Okay. 603C says, but may not modify a registered support order. Well, if Thailand is not a foreign country, then the support, the order doesn't qualify under the definition of a support order. Unless, of course, one reads the phrase registered support order to mean any support order that has been registered even under the I think the idea is, is orders that are entitled to be enforced, whether that be why by way of the formal registration procedure or the, the other way of, of enforcement, which UIFSA recognizes, which is the application and the extension of comedy that absent the conditions being met of section 615, you can only enforce those orders. Um, uh, uh, and you cannot, uh, modify them. Um, and I think that that's the, that that's what's 603C is, is really getting it. I just want the record to be clear. I'm not suggesting that Thailand is not a foreign country. Counsel keeps making this point and pulls out, uh, uh, statements that were perhaps early, very early on in this very, um, complicated litigation. Um, but the fact of the matter is, is while it might've been inartful at times, the idea here and the contention was that UIFSA always applied, right? It's just that the section 615 does not, and the other sections that are applicable do not afford a basis for the requested relief. Um, on the merits of, uh, let me, let me back up because Mr. Bargall was effectively alluding to some of the court's prior dispositions. And I think what he was getting at and referring to is his arguments about restricted cotton collateral estoppel in law, the case that he mentioned the brief, you know, as we, we deal with those, I think very adequately in the yellow brief, there was no final judgments in either case. All Harlow one did was recognize, uh, the, the, the order. It did not, that is not to, uh, modify anything. Um, as we discussed earlier, modification does not mean, or enforcement does not mean modification. They, the separate conditions of UIFSA have to be met. Otherwise, if you can just say, I don't care about UIFSA and we don't, it doesn't matter that the conditions are met. We can just look to section 510, you're voiding out UIFSA. And obviously we can't do that. Um, uh, but the one thing that he did mention is on Harlow two, which was the affirmance of the injunction and the attorney fee trust. That's all this court did, right? Was affirmed the notion that there was statutory authority for the without prejudice advance of interim fees that were going to be put into this trust. It didn't speak to any of the UIFSA. It didn't address any of that. It isn't law of the case. It isn't a determination of anything on that topic on the merits. And it was certainly not licensed for the circuit court to do what it did. And it certainly doesn't bar us on, on, uh, after, after the second appeal from arguing it here, um, on the, uh, evidentiary exclusion issue, I don't have that on the immigration evidentiary exclusion issue. I don't have anything to add, uh, that was not brought up by the justices, um, you know, to award 10 years of perspective support at $33,000 a month and seize it all at once in the faith, assuming an English cost of living while simultaneously barring all the evidence that this, that Whippoorn had no legal right to remain there. That happened. Our view is a position that no reasonable person would have taken. He said in the brief and justice Hoffman, as you alluded to at best, a wait and see approach should have been taken or at best a lot less time than 10 years, a lot, a lot shorter period of time than 10 years, um, should have been awarded. But again, I don't think you get there. I think that this case begins and ends with you website. And I would ask that this court, uh, vacate the judgment. Um, uh, as I alluded to in my opening remarks, um, and this is just me being a nervous lawyer. Um, I hate the fact that there are these trusts out there with my client's signature on them, where he purports to be the grand tour of a trust that he obviously was not. Um, and he was forced to sign that under penalty of contempt. Um, and this is not an attempt by him to affect the state plan. Um, my point being, if you're with me on you with, uh, and you're going to, I would ask please for an express declaration that those trusts are dissolved. Um, because it makes all of us nervous that those signed documents are out there. Um, uh, Mr. Bargiel's objective comments aside, Mr. Higginbotham, Mr. Higginbotham is not the first man walking the earth to deny parenting. She is not the first man walking the earth to want to disinherit his children. Those are ideas that are recognized by our Supreme court. You can do that. And that's perfectly legal and people do it all the time. And there's no, this certainly does not provide a basis for this modification for these outrageous amounts that were ordered far in excess of not only the shown needs of the children, but what this, what Whippaport tested for, she wished for in some sense of winning the lottery. Um, justice Lampkin, uh, I want to thank you and your colleagues for your time this morning. I appreciate you sticking with us, continuing this case. I thought it was efficient and fast to hear it all at once. Uh, I thank you for your thoughtful attention this morning and I yield the balance of my time. You don't have any more time. All right. Uh, thank you, uh, both. And, uh, we will take this case under consideration. We're I'm sorry if the judges could just stay on. Thank you.